FIRST NATIONAL BANK OF OCEAN CITY, PLAINTIFF-RESPONDENT, v. EASTERN MOTOR COMPANY, DEFENDANT-APPELLANT.

Argued May 17, 1932—Decided October 17, 1932.

For the appellant, *Cole & Cole.*

For the respondent, *William Elmer Brown, Jr.*

The opinion of the court was delivered by

CAMPBELL, CHANCELLOR. This is an appeal from a judgment, directed in favor of the plaintiff below, in an action of replevin concerning six Dodge automobiles.

The memebrs of a co-partnership known as Reid and Denight were authorized and licensed automobile dealers in Ocean City. The appellant-defendant, Eastern Motor Company, was the distributor for Dodge cars and Graham trucks in a territory including Ocean City and, as such, entered into an agreement as "dealer" with Reid and Denight as "associate dealer" on August 28th, 1926; Dodge Brothers, Incorporated, consenting thereto by endorsement of its approval on such contract. By this agreement Reid and Denight agreed to purchase from the appellant-defendant, Eastern Motor Company, as "dealer," Dodge cars and parts, at "manufacturer's price F. O. B. factory, less 22%," plus all taxes, loading charges, freight and conditioning charges if any and "payment shall be made by 'associate dealer' against delivery by 'dealer.'" Th econtract further provided that "for the purpose of securing payment, title to Dodge Brothers motor vehicle shall remain in "dealer" notwithstanding delivery to associate dealer until payment in full of amounts and charges * * *."

The course of dealing between Eastern Motor Company and Reid and Denight appears to have been that the motor vehicles were shipped from the factory, in Detroit, to the Eastern Motor Company, Reid and Denight or in the manufacturer's name, but, in any case the bill of lading was subject to payment of a sight draft drawn on the Eastern Motor Company. The bill of lading and sight draft were forwarded by the manufacturer to the Chelsea Safe Deposit and Trust Company, which notified the Eastern Motor Company of receipt thereof, and upon payment of the sight draft, the bill of lading was delivered by the bank to Eastern Motor Company, with an invoice. Whether payment in this manner was made upon the arrival of the cars, or before or after, does not clearly appear, and is not important.

The next step in the transaction appears to be that Reid

and Denight would pay to Eastern Motor Company, in cash, ten per cent. of the cost price of the cars, whereupon the latter would draw time drafts for the balance against Reid and Denight, payable to the order of Commercial Investment Trust (a financing corporation), and Reid and Denight would execute acceptances thereof, at the same time, executing trust receipts to the financing company; both the drafts and trust receipts, in each and all instances, applying to a single, specifically designated, vehicle. The amount of these drafts were then paid by the finance company to Eastern Motor Company, which, thereupon, released and delivered to Reid and Denight the bills of lading and they took possession of the respective cars, displayed them in their sales showroom and offered them for sale and sold them to such of the public as desired to purchase.

On November 10th, 1926, the respondent, First National Bank of Ocean City, loaned Reid and Denight, upon their promissory note, $2,500, which note becoming due December 10th, 1926, and not being paid, was protested. On December 16th, 1926, Reid and Denight executed to the respondent bank bills of sale for each of the six cars here in dispute and their unpaid, protested note, was delivered up to them. These bills of sale were recorded in the Cape May county clerk's office in the conditional sales records. Why, and how, it came to pass that they were so recorded does not appear but, we think, this is not material.

The six cars so conveyed to the bank-respondent were, at the time of the execution of said bills of sale, in a public garage of Reid and Denight, immediately adjoining their sales showroom, or were placed there immediately thereafter.

About three weeks after this transaction the Commercial Investment Trust (the financing company) took possession of some thirty cars from Reid and Denight, including the six cars here in question, and placed them in storage in the warehouse of the Seashore and Husted Express Company.

In all probability this action was taken by the finance company because Reid and Denight had defaulted in their payments upon drafts held by the finance company.

On January 1st, 1927, Eastern Motor Company, the appellant, gave two checks to the finance company; one for $4,938.56 and the other for $16,267.94, both of which were paid. These were given, as is said, to purchase from the finance company the thirty, or more, cars reclaimed by it from Reid and Denight; the lesser of these two payments, $4,938.56, covering the six cars here in question. It appears that at the time of this particular transaction and payment, the appellant received from the finance company the trust receipts executed to it by Reid and Denight with drafts attached, marked paid.

It is testified by one Zelley, of the Eastern Motor Company, that at the same time, and as part of this transaction, the finance company turned over and delivered to the Eastern Motor Company, bills of sale said to have been executed by Reid and Denight to the finance company and as to which this witness says "we looked for them but I think they were destroyed at the time." Nowhere else in the proofs does it appear that any part of the transaction among Eastern Motor Company, Reid and Denight and Commercial Investment Trust, bills of sale for the cars were executed and delivered by Reid and Denight to the latter company in the fiancing transactions.

At the conclusion of the hearing of testimony offered by both parties, counsel for the plaintiff below moved the trial court to strike out all the proofs respecting the financing of these transactions.

This motion appears not to have been directly passed upon by the trial court, but counsel for the defendants below moved a direction of verdict in their favor upon the ground that at the time the bank-respondent claimed to have obtained title, Reid and Denight had no title; that while the bank-respondent obtained bills of sale, it obtained no possession and such bills of sale were mere chattel mortgages given to pay an antecedent debt.

The trial court, and counsel for both parties, must have considered that there were two motions pending for direction of verdicts, because, so all treated of the situation, and

the trial court directed a verdict in favor of the plaintiff below upon authority of *Karkuff* v. *Mutual Securities Company*, 108 *N. J. Eq.* 128.

No point is made in this appeal that this was not the situation before the trial court and we, therefore, deal with the matter as if a formal motion for direction of verdict in favor of the plaintiff below was before the trial court.

The only ground of appeal appears in the notice of appeal and is—

"1. The court directed a verdict in favor of the plaintiff when it should have directed a verdict in favor of the defendant, or at least submitted the case to the jury."

The appellant urges that the judgment under review should be reversed because—

1. "The purported bills of sale relied upon by the plaintiff were, in substance and effect, chattel mortgages and the trial court should have so held, or submitted the question to the jury. In such event they are void as against the appellant, a subsequent *bona fide* purchaser for value, since the plaintiff failed to comply with section 4 of the Chattel Mortgage act. *Comp. Stat.* 1910, *p.* 463, § 4."

Two reasons for reversal are advanced under this ground:

(a) The plaintiff had a bill of sale but no possession and therefore the bill of sale was a mere chattel mortgage and was obtained upon the consideration of an antecedent debt.

(b) The plaintiff's bills of sale are void as a matter of law as against the appellant.

Both of these grounds go to the same point, that the alleged bills of sale were, in fact, mere chattel mortgages.

We find nothing in the proofs before the court below or any law applicable that supports this contention.

2. "Title to the automobiles originally passed from the appellant direct to the Commercial Investment Trust. The trust receipts conferred no title upon the dealer, and the plaintiff, which concededly gave no present consideration to the dealer for its purported bills of sale acquired no title thereby. The appellant subsequently re-acquired title from the Commercial Investment Trust in good faith, and for a present consideration, and should prevail."

The entire argument under this point is diametrically opposed to the holdings of this court in *Karkoff* v. *Mutual Securities Co., supra,* and *Commercial Finance Co.* v. *Schutt,* 97 *N. J. L.* 225.

The judgment under review is therefore affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ. 13.

*For reversal*—None.